IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION



FILED

OCT 2 6 2016

CLERK, US DISTRICT COURT
NORFOLK, VA

Jupiter Dennell Wilson, Sr.

    Plaintiff(Pro se litigant),

v.                   CIVIL ACTION NO: 2:16cv 629
                          JURY TRIAL DEMANDED

City of Chesapeake,
in it's Official Capacity as the

    Defendant.

### MOTION FOR JUDGMENT AND INJUNCTIVE RELIEF

**Comes now**, plaintiff, Jupiter D. Wilson, to pay for

consideration to contract for the sum of $400.00 to

expect impartiality and equity by sworn oaths and

affirmations from *this* Court for which plaintiff is

entitled, and to assert as alleged continuous Title VII

and ADEA violations against the above defendant of whom

this "person" has consciously persisted to apply

policies, practices and procedures to discriminate

against plaintiff based on plaintiff's race, and age in

retaliation to deliberately sustain continuing wrong

violations perpetuating a hostile work environment

cultivated with harassment and intimidation of which

was openly portrayed against plaintiff causing

disparate treatment, thus yielding a disparate impact

while defendant remained in outright defiance with

intentionally flagrant non-compliance despite having

participated in, and being in control of the same state

and federally regulated employment process as follows:


## I.   INTRODUCTION

1).   As it appears, the EEOC have omitted the

attachment that was the basis for this current EEOC

charge on April 3, 2015, of which plaintiff at the time

of current charge being reconstructed by the EEOC

asserted to EEOC to include enclosed original

construction by plaintiff to serve as an attachment of

which the EEOC has failed to include that was done

originally(of which "the EEOC [as usual] is unable to

conclude that the information obtained establishes

violations of the statutes"), prior to the decision

made by this Court on December 2, 2015, on Case No.:

2:14cv00420-MSD-DEM.

2).   November 1, 2016, will bring plaintiff's total
employment period with defendant while having rights
that accords and/or affords plaintiff to engage in
promotional opportunities to twenty(20) years.
However; prior to and since the time after preparation
and termination of litigation as determined by the
mandate of the Fourth Circuit's affirmance with Wilson
v. City of Chesapeake, No. 15-1480, 2015 U.S. App.
LEXIS 16180, at *1 (4th Cir. Sept. 11, 2015) and then
this Court's Dismissal Order issued on December 2,
2015, plaintiff has been still caused to be subjected
to a humiliating and perpetuating hostile work
environment laced with harassment and intimidation as
originally created, condoned, and controlled by the
employer through its subordinates that is indelibly
related to plaintiff's continued derailed aspirations
to obtain a promotion causing plaintiff to seek
processing for this current EEOC charge.

3). Because during plaintiff's entire employment period *as of to date* **plaintiff has never been promoted**, despite plaintiff's qualifications, seniority, and incessant efforts towards promotion, but instead, defendant prior to July 1, 2011, to date, has continued to act *by it's own volition*, and have deliberately chosen to remain in continued violations of § 704 (a) of Title VII of the Civil Rights Act of 1964, as amended and § 4(d) of the Age Discrimination Employment Act of 1967, included but not limited thereto; as a result of the continuation of delays and denials from the City of Chesapeake Fire Dept.'s white supervisors acting on behalf of the Defendant(the "City") to include **Battalion Chief Carlton Ackiss**, Fire Lieutenant William Disharoon, Lieutenant Jerry Bohn, Fire Division Chief Alvin Ellis, Deputy Fire Chief Dan Fermil, Chief Edmond Elliot, Division Chief Jeffrey Rabeau , and Captain Michael Tortora, of whom all thru promulgation and with approval of Defendant's unscrupulous policies, practices, and procedures applied *invidious subjective*

*denial promotional processes* **known as "the device"**
unlawfully executed, while appearing to be masked as
lawful with clandestine unlawful employment practices
that continuously generates and incubates daily
intimidation and harassment towards production of daily
continuous retaliatory disparate treatment thus
yielding a daily continuous retaliatory disparate
impact, all of which flowed from a hostile work
environment as applied daily by the defendant because
of plaintiff's **race and age** as follows:

4).   Due to these administrative hostilities, one
thing is for certain, that in this EEOC charge,
plaintiff has remained repeatedly subjected to
helplessly witness and experience being passed over
for:

(a) *"to be the Acting Lieutenant"*, and

(b) promotion by white officers acting on behalf of
the employer for the expressed purpose to select
another younger white, like in this current case,
Fire Fighter Nicholas Novellino to be the acting

officer towards promotion and was promoted coupled

with plaintiff being again denied that chance while

complaining about the same continued discriminatory

retaliation as a continuing wrong violation applied

by the defendant based on plaintiff's race and age.

5).   In other words, plaintiff has not been given the

same fair opportunity as whites similarly-situated to

be promoted, but instead defendant has ignored, failed,

and refused to provide plaintiff access to the state

and federally regulated equal employment process based

on plaintiff's race and age despite making conscious

constructive efforts to become qualified to act out of

title towards promotion.

6).   Plaintiff had repeatedly experienced hardly ever

getting any feedback on how plaintiff is doing with

training, such as what could have been done better, or

even given hardly any individualized instructions to

help plaintiff meet the expectations of a Lieutenant

while watching others get promoted in the face of

repeatedly being denied for promotion in a hostile work environment induced with harassment and intimidation as a result of the defendant's implementations of subtly flagrant **subjective** policies, practices or procedures while having knowledge of and being in control of the state and federally regulated employment process.

7).   **The above named defendant have continuously denied with retaliation plaintiff's rights to be promoted by continuing daily to ignore, fail, and refuse to allow plaintiff "to be [an] *Acting Lieutenant*" to promote plaintiff despite the subordinates on behalf of the defendant having knowledge of plaintiff's right to apply constructive, peaceful, and entitled rights to eagerly assert with anticipation for intentions to participate in the promotional processes, but instead the defendant continuously have sought to frustrate, obstruct, and plaque plaintiff by vigorously subjecting plaintiff subliminally and nefariously to unequal employment opportunities towards denial of promotion with intent**

**to generate upon plaintiff continuous tensions, biases, degradations, harassments, and intimidations for a humiliatingly perpetuating hostile work environment as plaintiff continues to witness younger whites and others get promoted.**

## II.  COMPLAINT

8).  Now based on this current EEOC charge filed April 3, 2015, that issued a "Dismissal and Notice of Rights", on August 23, 2016, Plaintiff whose race is black and at the time of filing the EEOC charge was 55 years old comes now to assert below the following issues of which the defendant have sought in defiance with deliberant indifference to remain out of compliance with the statutes.  Wherefore; plaintiff declares:

9).  The above named defendant despite having knowledge of an existing lawsuit and in the face of litigation remained deliberately in denial and defiant of Wilson's opportunity for **promotions** by continuing to

ignore, fail, refuse to notify and *protect* plaintiff's
entitled rights from the appearance of defendant's
invidiously discriminatory and retaliatory employment
practices that seems purposed with repeated denials,
delays, and with deliberate intent to repeatedly
inflict harms on plaintiff without any regard for the
defendant's knowledge and responsibility to the laws
that afforded this "person" authority to act on behalf
of itself through its employees, by causing Wilson to
suffer denial of advancement while witnessing and
experiencing being passed over by the defendant while
in control of the state and federally regulated
employment process for consideration to be the acting
officer towards promotion, and for promotion but rather
chose to select the younger white Firefighter like
Nicholas Novellino without providing to plaintiff a
reason to appear non-discriminatory.

10).  During December 4, 2014, after continuously
witnessing and experiencing how the Defendant
administers this employment process, since plaintiff

days as an eager trainee up to the time of filing this

current EEOC charge, Plaintiff has been inevitably

forced as inflicted by Defendant against plaintiff's

volition to realize with such coercive persuasion of

the subordinates on behalf of and as condoned by the

Defendant, that plaintiff must with reluctance

helplessly and involuntarily bow down to acknowledge

defendant's invidious subjectively controlled

employment policies during as it appears, to be an

unregulated state and federally unequal importunity

employment process against plaintiff's current

employment status to remain still just a firefighter?

11).  It became also apparent as plaintiff perceives

that what plaintiff has continued to experience is the

will of this Defendant(as a corporation) misperceiving

a possession of agonistic state rights as not so

surrendered(*nor as terms clearly defined*) as expected

to the federal government, yet as delegated to it's

subordinates for the express purpose of executing an

usurpation over plaintiff's employment relationship

without Due Process or Equal Protection of the law.

12). Plaintiff while continuing to daily experience all aforementioned above, by clearly seeing no chance for a change of heart from the Defendant's daily nefarious stoned-walled inflictions to create avoidance, denial and suppressions upon plaintiff for inconsideration to be the "acting lieutenant" towards refusal to promote, thus plaintiff has **sought with an unwavering conviction to rise up, stand up and face up** to defendant's intense sadistic adversity, and perplexity that has bombarded against and upon plaintiff's person, and with fervent determination has continued to rally to the cause against the plight of injustice as tolerated and encouraged by defendant's intent to incubate, fester, and ooze egregious deprivations painstakingly upon plaintiff while plaintiff courageously continues to press forward as unlawfully monitored by the Defendant during the unregulated state and federally unequal importunity

employment process.

13). Now after watching the same old results applied by the Defendant as described above using these same old ways prior to during, and after the 2009-2011 promotional process plaintiff had peacefully became fed-up with the Defendant's brazen biases applied upon plaintiff, so as the end of the July 1, 2013-June 30, 2015, promotional cycle was approaching, plaintiff with an energized and purposeful determination had undauntedly willed to positively seek out resolve from Defendant's "chain of command" by engaging in as described or titled:

### III. The compelled knee jerked reaction to the subjective relationship.

14). On Tuesday June 2, 2015, there was a meeting with Chief Ackiss and Captain Mangubat concerning the "Evaluation" written by Lt. Cherry concerning plaintiff. Plaintiff witnessed the meeting lasting one hour and 30 minutes with no resolve. There was then a

meeting with those two officers and Division Chief

Ellis.  That meeting was a little more productive with

Chief Ellis saying he understood what I thought was

crucial to my concern dealing with the EEO charge I

have on file.  Chief Ellis had asked plaintiff what

he(Chief Ellis) could do for me(plaintiff) and what was

it that plaintiff wanted to come out this situation.

Plaintiff met with that group for about 40 minutes

also.  Plaintiff then wanted to talk to Mr. Rosier

about the "Evaluation" and he(Mr. Rosier) thought that

plaintiff was only having communication problems.  Mr.

Rosier was correct, that when plaintiff is speaking no

one listens.  Mr. Rosier said that he(Mr. Rosier)

needed to have a couple of days to get back to

plaintiff.  The meeting lasted about 40 minutes and

plaintiff had thought that by Thursday we would have an

answer to the situation at hand.  Plaintiff then asked

if plaintiff could talk to the Deputy Chief Fermil and

it was granted.  When plaintiff had arrived at Deputy

Chief Fermil's office plaintiff was instructed to have

a seat and then entered the room was the Division Chief

Ellis and Fire Chief Elliott.  Plaintiff's seat was

against the wall with these three Chiefs surrounding

plaintiff.  Plaintiff began to talk about the things

that plaintiff believed were of the most importance to

the City and the Department.  The meeting lasted about

40 minutes.  When plaintiff had finished plaintiff was

told that plaintiff was in no position to hear from the

Fire Chief.  He(Chief Elliott) also stated that

plaintiff do not want to hear what Deputy Chief has to

say because plaintiff is not going to like it.

Plaintiff returned on Thursday June 4, 2015, and had a

meeting with the previous Chiefs Elliott, Ellis, and

Fermil.  The things talked about were indeed crucial

but not understood by the staff what plaintiff felt

seemed to be the problem.  Chief(Elliott) want to

explain the letter that he(Chief Elliott) addressed to

plaintiff about his(Chief Elliott) opinion concerning

plaintiff's "Evaluation" written by Lt. Cherry.

Plaintiff was able to convey plaintiff's thoughts

concerning plaintiff's employment with the City and it
seemed that the audience was not truly interested in
what plaintiff had to say. That meeting lasted about
an hour. On Friday June 12, 2015, plaintiff had
received a phone call from Chief Elliot about the
meeting which was to take place that day in the Central
Library. The detail of the meeting are not discussed
so much as the documentation of there being a meeting.
This was done because Chief Elliot said plaintiff was
not to go out of the "Chain of Command" which is
difficult to perform. Plaintiff had believed that
plaintiff was dealing with an EEO issue and need not
have to follow the chain of command. Plaintiff went to
Captain Mangubat(an EEO Officer) and tried to explain
it to him with no avail. So then plaintiff proceeded
to Mr. Rosier who refused to help earlier. Mr. Rosier
later said plaintiff had to talk to Chief Elliott and
bring this situation to Chief Elliott's attention.
Afterwards plaintiff had talked to Chief Elliott of
whom asked for time to fix this problem or at least

investigate it. Days later plaintiff had received a letter explaining the Defendant's position on plaintiff's concerns. No one seems to be listening to what plaintiff had to say. Mr. Rosier asked plaintiff to bring him(Mr. Rosier) a copy of the "Evaluation" so Mr. Rosier could take a look at it. Plaintiff thought it was to find the truth, but it was to find evidence it seems against plaintiff. Plaintiff had asked Mr. Rosier why now was he(Mr. Rosier)interested in the "Evaluation" now and not before. Mr. Rosier stated that plaintiff had said something about discrimination. Plaintiff had corrected Mr. Rosier and he(Mr. Rosier) had changed his(Mr. Rosier's) story. Mr. Rosier said that Chief Elliott had asked him(Mr. Rosier) to look into the matter. This caused plaintiff to further realize how much Plaintiff is not being listened to but Chief Elliot has the attention of those who have power to investigate, searching for whatever while trying to follow the chain of command to make it right.

**IV).  Plaintiff felt subtly compelled to realize that as a result of what plaintiff had experienced or witnessed transpiring from June 2, 2015, while in good faith engaging with the "chain of command" was as it appears to be an undeniable confirmation of the continuous discriminatory and retaliatory behavior to promulgate a hostile work environment laced with and intensified by progressive harassment and intimidation through delegation of defendant's subordinates(policy makers) to implement it's arrogant, brazen, barbaric, and racists policies as if nothing else ever matters or should become necessary to give rise towards compliance of the state and federally regulated equal opportunity employment process of which defendants deliberately chose to usurp as further <u>proofed by the following</u>:**

**15).  Plaintiff's qualifications are compliant with state requirements and were accomplished with sacrifices made to obtain said qualifications.**

16).  Now in order to be put on the list for to "act out of title," a fire fighter had to satisfy all other criteria prior to being considered as confirmed and/or affirmed by plaintiff's white superiors.  All personnel are required to endure training to demonstrate ability to lead other firefighters and to make quick or split second decisions with at times little or no notice concerning defending, preserving, and protecting the

life, liberty, and property of the citizens of Chesapeake, Virginia. Therefore; objectively speaking, apart from conspicuous unlawful distractions, and/or deterrence, it is undoubtedly essential to receive and acquire towards retention, the most impressionable, intense and prudent training available from the defendants.

17). Plaintiff has sacrificed the use of personal vacation pay, use of personal resources like auto, time, and money, etc. to constructively attempt to obtain an entitled promotion.

18). Plaintiff had at all times limited or minimal access to training within the promotional processes while having knowledge of whites similarly-situated having daily unrestricted access to train and communicate with the chain of command unto being an acting officer for promotion. It appears plaintiff was and/or has been subjected to a glass ceiling towards promotion.

19). During the July 1, 2009, thru the June 30, 2011, promotional process plaintiff had received less than one(1) day of training.

20). During the July 1, 2011, thru the June 30, 2013, promotional process plaintiff had received less than five(5) of days of training.

21). During the July 1, 2013, thru the June 30, 2015, promotional process plaintiff had received less than nineteen(19) of days of training.

22). During the July 1, 2015, thru the June 30, 2017, promotional process plaintiff has received less than twelve(12) of days of training so far.

## V. Reprimands, disciplinary actions, etc.

23). Lieutenant Duane Daggers wrote up a Counseling letter against plaintiff twice as instructed by the defendant's chain of command for praying for an external customer, and not fulfilling Continuing Educational Units without being instructed how to do so

from anyone for over an entire year of which included

the oversight of Lt. Gary Burke, Lt. Disharoon, and

Chief Carlton Ackiss.  On September 3, 2009, plaintiff

incurred a back injury while waiting to be recertified

in October 2009, plaintiff remained in treatment until

December of 2009, plaintiff returned back to work and

in October 2010, defendant's chain of command asked for

recertification card for which was overlooked by the

same defendant's chain of command for execution during

the period of injury.  Since that time the chain of

command that included effect of the defendant's

delegation has continued daily to work delays and

denials against plaintiff's opportunity for promotion

as shown by being blamed for how the William Copeland

event resulted and Novelino's promotion?

## VI.  **Lists of persons promoted**

24).  During the July 1, 2009, thru the June 30, 2011,

promotional process the following persons were

promoted:

Ryan McFadden(white) on February 1, 2011(Lt.).

Brian Callahan(white) on February 1, 2011(Lt.).

25). During the July 1, 2011, thru the June 30, 2013, promotional process the following persons were promoted:

Robert Steward(white) on September 16, 2012(Lt.).

Christopher Tischler(white) on September 16, 2012(Lt.).

William Rary(white) on September 16, 2012(Lt.).

Christopher Moore(white) on April 1, 2013(Lt.).

Kyle Billups(white) on June 16, 2013(Lt.).

Brian Evers(white) on June 16, 2013(Lt.).

Paul Pongrantz(white) on June 16, 2013(Lt.).

Jason Sarver(white) on June 16, 2013(Lt.).

Marshall Smith(black) on June 16, 2013(Lt.).

Kevin Smith(white) on June 16, 2013(B.C.).

Jerry Barnes(white) on June 16, 2013(Cap.).

Nester Mangubat(Asian) on June 16, 2013(Cap.).

26). During the July 1, 2013, thru the June 30, 2015, promotional process the following persons were promoted:

Jacob R. Newton(white) on April 1, 2014(Lt.).

Robert J. Oliver(white) on April 1, 2014(Lt.).

Brian K. Fancher(white) on May 1, 2015(B.C.).

Lawrence Mathews(white) on May 1, 2015(Cap.).

Jonathan Hinson(white) on May 1, 2015(Cap.).

Jeremy Miller(white) on May 1, 2015(Cap.).

Jeremy Brittenham(white) on May 1, 2015(Lt.).

Brian Atkins(white) on May 1, 2015(Lt.).

Byran Soriano(Asian) on May 1, 2015(Lt.).

James C. Ellis(white) on June 15, 2015.

Jerry Tumer(white) on June 16, 2015(Cap.).

Joshua "Pete" Fowler(white) on June 16, 2015(Lt.).

27). During the July 1, 2015, thru the June 30, 2017, promotional process the following persons were promoted:

Mary Williams(black) on July 8, 2015(D.F.M.).

Steven Bradley(white) on August 1, 2015(Cap.).

Anthony Barakat(white) on August 1, 2015(Lt.).

Mary Morton(white) on August 1, 2015(Lt.).

Daniel Smith(white) on August 1, 2015(Lt.).

Donald Wooten(white) on December 1, 2015(D.C.).

Christine Dosmann(white) on December 1, 2015(B.C.).

John Gibson(white) on December 1, 2015(B.C.).

Nester Manugubat(Asian) on December 1, 2015(B.C.).

Paul Gorski(white) on December 1, 2015(Cap.).

David King(white) on January 1, 2016(Cap.).

Christopher Mackiewicz(white) on January 1, 2016(Cap.).

Karl Dennis(white) on January 1, 2016(Lt.).

Derek Holland(white) on January 1, 2016(Lt.).

Curtis Wilson(black) on January 1, 2016(Lt.).

William Helms (white) on September 1, 2016(Lt.).

## VII. Percentage of blacks promoted to Lieutenant, Captain, etc. as compared to whites during these four promotional periods

28). Since the 2009 promotional cycles to date excluding Novelino's promotion, there has been 42 promotions based on persons listed above of which 7% are black and only roughly 12% are minorities as compared to 82% being white.

## VIII.   Percentage of non-whites promoted to ranks like Captain and up as compared to whites during these three promotional periods that totaled 42 promotions.

30).  Nestor Mangubat a non-white was promoted to Captain and then BC from promotional periods stated above to show 2%, and then 5% as promoted twice.

## XI.  The effect of experiencing non-promotion while still employed and witnessing others get promoted.

31).  Even though ever determined as to whites similarly-situated, Plaintiff was/is forced to work in daily humiliation, while witnessing younger whites with less seniority or less qualifications get promoted, and while being continued to be subjected to daily harassment, and intimidation as a result of the chain of command's subjective executions on behalf of the defendant's delegation to methodically, perpetually, and systematically deny plaintiff a fair chance for promotion like whites similarly-situated, especially those of whom were the sons, family, or friends of the chain of command.

32).  As compared to whites similarly-situated

Plaintiff was subjected to applying two to three times the effort of which included past and current litigation to assert intent to attempt to participate towards promotion by enduring repeated egregious delays and denials, before being placed on both the "Old list" of the promotional cycle of July 1, 2011, thru June 30, 2013, and the "New list" of the promotional cycle of July 1, 2013, thru June 30, 2015, despite plaintiff's qualifications and seniority.

33). As a result of defendant's continuous denial against plaintiff, plaintiff's drive, qualifications, and talents for a fair and reasonable opportunity for promotion that include unfettered access to participate in the promotional process, plaintiff has become continually subjected to languishing and/or aging in stamina, strength, speed, etc.; thus increasing the propensity to become subject to injury while still being subjected to remain just a firefighter.

34). Also as a result of Defendant's deliberate

continuous flagrant usurpations to deny plaintiff's
entitled rights to fair access to the promotional
process, the defendant has induced Plaintiff's
inability to litigate thus further taxing plaintiff's
ability to freely engage in the promotional process.

### X. Negative employment actions by employer taken against plaintiff to continue experiencing the condition of non-promotion.

35). Plaintiff's evaluations were lowered despite
plaintiff's increased efforts to aspire to
accomplishing more productivity to the enhancement of
the defendant while daily being excluded towards
promotion and punished for things plaintiff didn't do.

36). Plaintiff was looked at with disdain causing
plaintiff to feel discounted by comrades and the chain
of command leaving plaintiff further behind to not
experience progressive promotional opportunities by
being left outside of the loop.

## XI.  Plaintiff pursuant to Local Rule 7(F)(3) concerning the 30 page(s) limit reserves the right to further mention in support of this Complaint through Plaintiff's Motion In Opposition to Defendant's Motion to Dismiss the following:

a). Plaintiff's experience with the chain of command.

b). The subjective process and its affect and effect generally on non-white firefighters.

c). The people that were hired during the time plaintiff was hired and their employment status.

d). Lists the persons over 40 years of age or age.

e). The newly discovered promotion and the defects.

## XII.  RELIEF SOUGHT

A.  Plaintiff requests the court to grant Injunctive Relief as follows:

B.  The Defendant through its agents, supervisors, employees, etc. be enjoined from maintaining current unlawful employment practices against Plaintiff in violation of Title VII of Civil Rights Act of 1964 as conflicting with Title VII and laws.

C.  Issue an injunction prohibiting denial of equal

employment opportunity to Plaintiff and comply

with Title VII, and laws of the United States. See

Exhibits A-B (includes Right to Sue Letter).

D.  In accord with the foregoing, plaintiff Jupiter D.

Wilson claims damages against defendants as follows:

| | |
|---|---|
| Compensatory | N/A |
| travel expenses | N/A |
| mental anguish | $3 Million Dollars |
| expected loss | N/A |
| of lifetime investment | N/A |
| of his property | N/A |
| and loss of his stability | N/A |
| protection, care | N/A |
| and residence | N/A |
| Punitive damages: | $10.34 Million Dollars |
| Attorney fees, 42 U.S.C. § 1988(b): | $6.66 M Dollars |

**Total damages:**                    **$20 Million Dollars**

Wherefore; plaintiff demands judgment against Defendant for fair opportunity for promotions from Lieutenant to Deputy Chief in addition to plaintiff's costs expended in this action(pursuant to state and federal law).

Plaintiff request competent legal counsel be timely appointed in the interest of justice for fair representation of a proper case to the Court.

Respectfully Submitted,                    **October 26, 2016**

Jupiter D. Wilson Sr., pro se litigant     757-560-7449
1600 Head of River Road
Chesapeake, Virginia 23322

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRIGINIA**
**_____ DIVISION**

_Jupiter D. Wilson Sr._

Plaintiff(s),

v.

_City of Chesapeake Va_

Defendant(s).

Civil Action Number: _2:16 cv 629_

## LOCAL RULE 83.1(M) CERTIFICATION

**I declare under penalty of perjury that:**

**No attorney has prepared, or assisted in the preparation of** _Motion For Judgment of Injunctive Relief_

(Title of Document)

_Jupiter D. Wilson Sr._
Name of *Pro Se* Party (Print or Type)

_Jupiter D. Wilson Sr._
Signature of *Pro Se* Party

Executed on: _10/26/2016_ (Date)

**OR**

**The following attorney(s) prepared or assisted me in preparation of** _____.

(Title of Document)

_____
(Name of Attorney)

_____
(Address of Attorney)

_____
(Telephone Number of Attorney)
Prepared, or assisted in the preparation of, this document

_____
(Name of *Pro Se* Party (Print or Type)

_____
Signature of *Pro Se* Party

Executed on: _____ (Date)